```
UNITED STATES DISTRICT COURT                       USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                      DOCUMENT
-------------------------------------------------- X  ELECTRONICALLY FILED
  UNITED STATES OF AMERICA,                  :     DOC #:_____
                                             :     DATE FILED: 7/2/2018
        -against-                            :     17-CR-438 (VEC)
                                             :
  EDWIN ARAUJO,                              :     MEMORANDUM
                              Defendant.     :     OPINION AND ORDER
-------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Defendant Edwin Araujo, an alleged member of a gang primarily operating in the Washington Heights neighborhood of Manhattan, is charged with racketeering, drug distribution, and firearms offenses. Araujo is scheduled to be tried with four other Defendants on October 15, 2018. He has filed a pretrial motion to dismiss the Indictment on double jeopardy grounds. For the following reasons, the motion is DENIED.

## BACKGROUND

### I. The Pharmacies Case

The focus of Araujo's motion is an indictment to which he pleaded guilty before Judge Andrew L. Carter, Jr. *See* 13-CR-811 (the "Pharmacies Case"). The indictment in the Pharmacies Case charged Araujo and several others (including other Defendants charged in the case before this Court) with participating in a scheme to burglarize over 120 pharmacies across New York City, to steal controlled pharmaceutical drugs, and to distribute them for profit.

### A. The Charges and Dispositions in the Pharmacies Case

In the Pharmacies Case, Araujo and others were charged with conspiracy to burglarize pharmacies, in violation of 18 U.S.C. § 2118(d), and conspiracy to distribute (and to possess with the intent to distribute) controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and

841(b)(1)(C). *See* Indictment, 13-CR-811, Dkt. 2.[1] The statutory provisions under which the drug conspiracy was charged do not specify particular types or quantities of drugs, *see* 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), but the indictment alleged that the conspiracy involved the distribution of (and the possession with the intent to distribute) Schedule II pharmaceutical drugs, such as oxycodone, amphetamine, morphine, and the like. *See* Indictment, 13-CR-811, Dkt. 2, ¶ 6.

Araujo pleaded guilty to conspiracy to burglarize pharmacies and conspiracy to distribute controlled substances. *See* Judgment, 13-CR-811, Dkt. 407. One of Araujo's co-Defendants, Shajonny Santana, proceeded to trial and was acquitted on both charges. *See* Verdict Form, 13-CR-811, Dkt. 589; Judgment of Acquittal, 13-CR-811, Dkt. 584.[2]

### B. The Facts Alleged and Proven in the Pharmacies Case

The record of Santana's trial in the Pharmacies Case provides details about the charged conspiracies. The Court has reviewed the transcript of that trial, along with transcripts of Araujo's guilty plea and sentencing proceedings. *See* Santana Trial Transcript, 13-CR-811, Dkts. 592–606; E. Araujo Plea Transcript, 13-CR-811, Dkt. 162; E. Araujo First Sentencing Transcript, 13-CR-811, Dkt. 291; E. Araujo Second Sentencing Transcript, 13-CR-811, Dkt. 411.

At Santana's trial, the Government presented evidence that Araujo was part of a crew of burglars that targeted hundreds of pharmacies across New York City between 2010 and 2013. *See* Santana Trial Tr. 95–99, 104, 255–59, 331–35, 396. The crew burglarized pharmacies and stole wholesale quantities of narcotic mediations, such as OxyContin, Opana, and Percocet. *See id.*

---

[1] Additionally, the Pharmacies Case indictment charged Araujo with obstruction of justice, in violation of 18 U.S.C. § 1512(a)(2). *See* Indictment, 13-CR-811, Dkt. 2. That charge was later dropped and is not relevant to the Court's double jeopardy analysis.

[2] Araujo was charged in the original indictment in the Pharmacies Case, *see* 13-CR-811, Dkt. 2, whereas Santana was charged in a Seventh Superseding Indictment in that case, *see* 13-CR-811, Dkt. 339. The parties agree that the two charging instruments are not materially different for purposes of double jeopardy analysis. *See* Gov. Ltr. (June 11, 2018), 17-CR-438, Dkt. 255, at 2; E. Araujo Ltr. (June 15, 2018), 17-CR-438, Dkt. 265, at 2.

at 76–80, 95–96, 105, 470–77, 497–98. The crew then sold the drugs and shared in the proceeds. *See id.* at 95–96, 104–08, 150, 159, 384–91, 548–52.

In its summation and rebuttal at Santana's trial, the Government argued that Araujo was one of the leaders of the burglary crew. *See id.* at 903, 973, 980; *see also* Gov. Ltr. (June 11, 2018), 17-CR-438, Dkt. 255, at 5. The evidence introduced at Santana's trial showed that Araujo recruited people for burglaries, helped the burglars break into pharmacies, searched the pharmacies for high-value drugs, and directly participated in selling the stolen drugs. *See* Santana Trial Tr. 73–74, 95–99, 104–08, 150, 159, 331, 391–93, 396, 411.

## II.     The Case Before This Court

The Indictment in this case charges Araujo, Santana, and several other Defendants who also pleaded guilty to charges in the Pharmacies Case. *See* Indictment, 17-CR-438, Dkt. 3; Indictment, 13-CR-811, Dkt. 2. The Government alleges that the Defendants were members of the Hot Boys, a racketeering enterprise whose activities centered on the theft and distribution of controlled substances. *See* Indictment, 17-CR-438, Dkt. 3; Gov. Mem. of Law on Motions *in Limine*, 17-CR-438, Dkt. 192, at 3–7. According to the Government, the Hot Boys burglarized pharmacies, conducted armed home invasions, and distributed controlled substances on a large scale. *See* Indictment, 17-CR-438, Dkt. 3; Gov. Mem. of Law on Motions *in Limine*, 17-CR-438, Dkt. 192, at 3–7.

The Indictment in this case charges all Defendants, including Araujo, with racketeering conspiracy, in violation of 18 U.S.C. § 1962(c)–(d) (Count One); drug conspiracy, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count Three); and firearms offenses, in violation of 18 U.S.C. § 924(c) (Count Five).[3] *See* Indictment, 17-CR-438, Dkt. 3.

---

[3]     Eight Defendants in this case's Indictment (Defendants Guillermo Araujo, Belliard, Castillo, Martinez, Nunez, Santana, Santiago, and Silva) have pleaded guilty. Additional charges have been brought against four other

3

On March 29, 2018, Santana moved to dismiss Counts One, Three, and Five of the Indictment on double jeopardy grounds. *See* Santana Notice of Mot., 17-CR-438, Dkt. 170. The Court heard oral arguments and, on June 5, 2018, ordered supplemental briefing on the double jeopardy issue. *See* Order, 17-CR-438, Dkt. 249. The Government filed its supplemental brief on June 11, 2018. *See* Gov. Ltr., 17-CR-438, Dkt. 255.

Santana subsequently pleaded guilty and withdrew his motion. *See* Order (June 19, 2018), 17-CR-438, Dkt. 271. Araujo, however, filed a response to the Government's supplemental brief, in which Araujo asked the Court to dismiss Count Three of the Indictment and joined in Santana's previously advanced arguments in support of that application. *See* E. Araujo Ltr. (June 15, 2018), 17-CR-438, Dkt. 265.

## DISCUSSION

### I. The Applicable Law

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause "protects against both multiple punishments and successive prosecutions for the same offense." *United States v. Basciano*, 599 F.3d 184, 196 (2d Cir. 2010). Two offenses are the "same" if they are the same both "in fact and in law." *Id.* (internal quotation marks omitted) (quoting *United States v. Estrada,* 320 F.3d 173, 180 (2d Cir. 2003)).

The "same-elements" test established in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), and refined in *United States v. Dixon*, 509 U.S. 688, 696 (1993), is used to determine whether two offenses are the same "in law." *See Basciano*, 599 F.3d at 197–98. "That test asks whether 'each offense contains an element not contained in the other.'" *Id.* (quoting *Dixon*, 509

---

Defendants (Defendants Bonilla, Contreras, Dominguez, and Medina) who are also named in the Indictment. *See* Indictment, 17-CR-438, Dkt. 3.

U.S. at 696). "If there is an element in each offense that is not contained in the other, they are not the same offense for purposes of double jeopardy, and they can both be prosecuted." *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999). Under this test, a court looks only to the offense as Congress has defined it, not to the facts or conduct at issue in either of the two prosecutions. *See Dixon*, 509 U.S. at 704; *Basciano*, 599 F.3d at 197–98; *Chacko*, 169 F.3d at 147.

If two offenses are the same "in law," the next step is to determine whether they are the same "in fact." *See Basciano*, 599 F.3d at 197–98 & n.11 (citing *United States v. Olmeda*, 461 F.3d 271, 282 (2d Cir. 2006); *United States v. Korfant*, 771 F.2d 660, 662 (2d Cir. 1985)). To do so, the Second Circuit has established a burden-shifting framework, in which the defendant must first "make a colorable showing that the crimes are the same." *Basciano*, 599 F.3d at 197 (quoting *Olmeda*, 461 F.3d at 283). If the defendant does so, the Government must then show by a preponderance of the evidence that a reasonable person, familiar with the facts and circumstances of the two charges, would not "construe the initial indictment, at the time jeopardy attached, to cover the offense that was charged in the subsequent prosecution." *Id.*

To determine whether two conspiracy charges are the same offense "in fact," a court must determine whether the two conspiracies involve distinct agreements. *See United States v. Ansaldi*, 372 F.3d 118, 124–25 (2d Cir. 2004) ("The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute." (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942))); *United States v. Gaskin*, 364 F.3d 438, 454 (2d Cir. 2004); *United States v. Lopez*, 356 F.3d 463, 467 (2d Cir. 2004). Courts in this Circuit examine a number of factors to determine whether conspiracies involve factually distinct agreements:

> (1) [whether] the criminal offenses [are] charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged

5

conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*United States v. Korfant*, 771 F.2d 660, 662 (2d Cir. 1985); *see also Basciano*, 599 F.3d at 198 n.11; *United States v. Gunn*, 366 F. App'x 215, 217–18 (2d Cir. 2010); *Estrada*, 320 F.3d at 180–81.[4]

## II. The Drug Conspiracy in the Pharmacies Case and the Drug Conspiracy in Count Three of This Case Are the Same in Law

As an initial matter, it is worth clarifying the scope of Araujo's double jeopardy challenge. Araujo does not argue that his conviction for conspiracy to commit pharmacy burglaries raises any double jeopardy problem. *See* E. Araujo Ltr. (June 15, 2018), 17-CR-438, Dkt. 265. And with good reason: conspiracy to commit pharmacy burglaries and the charges against Araujo in this case (racketeering conspiracy, drug conspiracy, and firearms offenses) are clearly different in law. Additionally, Araujo does not dispute that the drug conspiracy charge in the Pharmacies Case is different in law from the racketeering conspiracy and firearms offense charged in this case. *Id.* Araujo argues only that the drug conspiracy charged in this case is barred under the Double Jeopardy Clause by his guilty plea to the drug conspiracy charged in the Pharmacies Case.

The Pharmacies Case charged a conspiracy to distribute (and to possess with the intent to distribute) controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). *See* Indictment, 13-CR-811, Dkt. 2; Judgment, 13-CR-811, Dkt. 407. In this case, Count Three charges Araujo with conspiracy to distribute (and to possess with the intent to distribute)

---

[4] "In certain cases, it may be relatively simple to determine objectively the factual identity of different charges," rendering an extended *Korfant* analysis unnecessary. *United States v. McAuley*, 629 F. App'x 74, 75 (2d Cir. 2015) (quoting *Olmeda*, 461 F.3d at 282). In *McAuley*, for example, the defendant was "being prosecuted (1) for a different offense, (2) committed by different perpetrators, (3) against a different victim, (4) at a different time, (5) in a different location, (6) in a different judicial district." *Id.* at 76. Because the defendant had "not made a colorable showing" that the two charges were the same in fact, his double jeopardy challenge failed. *Id.*

controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). *See* Indictment, 17-CR-438, Dkt. 3.

These two offenses are the same in law. The statutes charged in each case are identical, except that the penalty provision charged in this case is 21 U.S.C. § 841(b)(1)(A), whereas the penalty provision in the Pharmacies Case was 21 U.S.C. § 841(b)(1)(C). Under § 841(b)(1)(A), specific drug types and quantities carry enhanced penalties, so the Second Circuit has held that drug type and quantity are "elements" of a § 841(b)(1)(A) charge. *See United States v. Gonzalez*, 420 F.3d 111, 129 (2d Cir. 2005); *United States v. Thomas*, 274 F.3d 655, 663 (2d Cir. 2001).[5] Section 841(b)(1)(C) contains no such penalty enhancement, so drug type and quantity are not elements of that offense. Thus, § 841(b)(1)(A) contains all of the elements in § 841(b)(1)(C), but not the other way around, meaning that § 841(b)(1)(C) is a lesser-included offense of § 841(b)(1)(A). *See United States v. Taylor*, 816 F.3d 12, 18–19 (2d Cir. 2016); *United States v. Evans*, 293 F. App'x 63, 68 (2d Cir. 2008). A lesser-included offense is the same in law as its corresponding "greater" offense for double jeopardy purposes. *See Morris v. Reynolds*, 264 F.3d 38, 49 (2d Cir. 2001) (citing *Brown v. Ohio*, 432 U.S. 161, 168 (1977)); *United States v. White*, 240 F.3d 127, 132–33 (2d Cir. 2001).

---

[5] To be clear, *Gonzalez* and *Thomas* held that drug type and quantity are "elements" of § 841(b)(1)(A) for purposes of the Sixth Amendment right to a jury trial, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See Gonzalez*, 420 F.3d at 129; *Thomas*, 274 F.3d at 663. Whether *Apprendi* makes these facts "elements" for purposes of the Fifth Amendment's Double Jeopardy Clause could be a more complicated question. This Court need not decide that question, however, because both the Government and Araujo agree that the two drug conspiracies that are at issue are the same in law. *See* Gov. Ltr. (June 11, 2018), 17-CR-438, Dkt. 255, at 2; E. Araujo Ltr. (June 15, 2018), 17-CR-438, Dkt. 265, at 2.

## III. The Two Conspiracies Are Not the Same in Fact

### A. A Review of the Record Shows that Each Conspiracy Involved a Distinct Agreement

Even without the *Korfant* factors, a review of the Pharmacies Case record makes clear that the two drug conspiracies involved distinct agreements. The conspiracy charged in this case is centered around alleged armed home invasions of drug dealers, *see* Gov. Ltr. (June 11, 2018), 17-CR-438, Dkt. 255, at 6, while the conspiracy charged in the Pharmacies Case focused on non-violent burglaries of pharmacies, *see* Santana Trial Tr. 96–98, 127, 142–55, 255–59. The conspiracy in this case allegedly involves heroin, cocaine, and marijuana, *see* Indictment, 17-CR-438, Dkt. 3, ¶ 20, whereas the conspiracy in the Pharmacies Case involved prescription medications, *see* Santana Trial Tr. 73–79, 96, 105, 127, 331, 411, 470–77, 497–98, 797–99. Thus, the record makes clear that each conspiracy involved wholly different objectives and methods, suggesting that they stem from factually distinct agreements.

Several items of evidence adduced at Santana's trial confirm this conclusion. First, the modus operandi and division of labor among members of the Pharmacies Case conspiracy was specific to burglaries of pharmacies. At each burglary, one member of the crew broke into the pharmacy (often by drilling a hole into the pharmacy's roof), while another listened for police on a scanner, and another—usually, Araujo—sorted through pill bottles and collected the most high-value drugs he could find. *See id.* at 73–74, 97–99, 329–35, 381, 411. The burglars then carried the drugs out in a garbage bag taken from the pharmacy. *See id.* at 98, 331. The Government presented evidence that the burglars repeated this pattern in hundreds of pharmacy burglaries citywide, but there was no evidence that the same pattern extended to home invasions. *See, e.g., id.* at 255–57, 329–35. Second, after each burglary, the crew discussed selling the stolen pharmaceuticals on the street and distributing the proceeds. *See id.* at 103–08, 150–51, 159–60.

There was no evidence that these discussions included plans to sell non-prescription drugs such as heroin, cocaine, or marijuana. Finally, several items of evidence—including text messages, testimony about a controlled purchase operation, and recorded calls—showed that the burglars sold Opana, Percocet, and other prescription drugs without any indication that they might also sell heroin, cocaine, or marijuana in the same transactions. *See id.* at 252–53, 384–93, 396, 426–27, 548–53. All of this evidence suggests that the agreement among the Pharmacies Case burglars was focused on pharmacies and prescription drugs, not on home invasions, heroin, cocaine, or marijuana.[6]

Furthermore, nothing in Araujo's allocution, when he pleaded guilty in the Pharmacies Case, suggests that he or the Government understood that his plea covered an agreement to distribute any drugs other than the ones he stole from pharmacies. *See* Araujo Plea Tr., 13-CR-811, Dkt. 162, at 18–21. This fact alone weighs heavily against Araujo's double jeopardy challenge, as the scope of a plea agreement in large part controls the scope of double jeopardy

---

[6] Before pleading guilty in the instant case, Santana argued that the conspiracy charged in the Pharmacies Case extended beyond pharmaceuticals to "heroin trafficking." Santana Mem. of Law, 17-CR-438, Dkt. 171, at 9. That argument relied on evidence adduced at Santana's trial regarding a buy-bust operation, in which a confidential informant attempted to purchase heroin from one of the Pharmacies Case defendants, Jose Gonzalez. *See id.* (citing Santana Trial Tr. 509–11). During the buy-bust, Gonzalez arrived with another defendant charged in the Pharmacies Case, Alan Feliz, as well as an unidentified third individual. *See* Santana Trial Tr. 509–11. The three men arrived at the buy-bust in a car registered to Araujo's girlfriend. *See id.* at 400, 516. Aside from the involvement of Gonzalez, Feliz, and (possibly) Araujo, no evidence whatsoever suggested that the attempted heroin purchase had any connection to the pharmacy burglary ring. In fact, it appears that this testimony was elicited only as foundation to introduce into evidence Gonzalez's cell phone, which was recovered during the buy-bust operation. *See id.* at 512–13. Absent some indication that the agreement to sell heroin at the buy-bust was linked to the conspiracy to burglarize pharmacies and to sell pharmaceutical drugs, Santana's argument fails.

Additionally, Santana's motion noted that the cooperating witness in his trial admitted to burglarizing homes 60 to 80 times, sometimes with Araujo. *See* Santana Mem. of Law, 17-CR-438, Dkt. 171, at 9–10 (citing Santana Trial Tr. 95, 122–25). From this evidence, Santana leaps to the conclusion that the conspiracy charged in the Pharmacies Case must have included "residential burglaries and robber[ies] of drug dealers," *i.e.*, the same means and methods of the conspiracy charged in the instant case. *Id.* This argument misconstrues the record. The cooperating witness stated that he committed residential burglaries *before* he began burglarizing pharmacies with Araujo. Santana Trial Tr. 95. And the witness expressly stated that the burglaries were not armed home invasions, but, rather, took place when no one was expected to be home. *Id.* at 122, 162. This testimony, therefore, is completely inapposite. It was clearly elicited to preempt Santana's impeachment of the witness, but it bears no apparent connection to either of the conspiracies that are at issue here.

protection against a successive prosecution. *See Gunn*, 366 F. App'x at 219 (citing *Olmeda*, 461 F.3d at 286 n.14).

### B. The *Korfant* Factors Further Support Denial of Araujo's Motion

Applying the *Korfant* factors further supports the conclusion that the two conspiracies are different in fact. As to the first factor, the offenses are charged in successive indictments, but "[t]his is a matter of little moment when the specifics of the charges are examined in conjunction with the other factors." *Estrada*, 320 F.3d at 182. Applying the second factor, the overlap of participants, six Defendants charged in the Pharmacies Case's drug conspiracy were also charged in the instant case's drug conspiracy, but fourteen were not.[7] Despite the overlap of a few participants, the wide divergence in membership between the two conspiracies shows that it was possible to participate in one unlawful agreement without participating in the other—and, thus, that the two agreements were separate and distinct. Additionally, the Government proffers that the roles of the Defendants were different in each conspiracy; Santana, for example, was a mere lookout during the pharmacy burglaries, but he was allegedly a major player in the distribution of heroin, cocaine, and marijuana. *See* Gov. Ltr. (June 11, 2018), 17-CR-438, Dkt. 255, at 5. Conversely, Araujo was a leader of the pharmacy burglaries but was allegedly lower on the totem pole when it came to invading drug dealers' homes. *See id.* Thus, the second factor suggests that the offenses were different in fact.

The third *Korfant* factor, the overlap of time, is a closer call. The drug conspiracy in the Pharmacies Case spanned from approximately 2010 to 2013, *see* Indictment, 13-CR-811, Dkt. 2, whereas the conspiracy in this case allegedly began in 2006 and concluded in 2017,

---

[7] Edwin Araujo, Guillermo Araujo, Alvarado Dominguez, David Santiago, Esfrain Silva, and Shajonny Santana were charged in both drug conspiracies. *See* Indictment, 17-CR-438, Dkt. 3; Indictment, 13-CR-811, Dkt. 2; S7 Indictment, 13-CR-811, Dkt. 339.

*see* Indictment, 17-CR-438, Dkt. 3. The Government argues that this factor "meaningfully support[s] a double jeopardy challenge" only when the Government charges a larger conspiracy before a smaller conspiracy, as that sequence implicates the "the disapproved process whereby the Government charges smaller and smaller conspiracies, wholly contained within the scope of a large conspiracy, until it finds one small enough to be proved to the satisfaction of a jury." Gov. Ltr. (June 11, 2018), 17-CR-438, Dkt. 255, at 5 (internal quotations omitted) (quoting *Estrada*, 320 F.3d at 182–83). But the Second Circuit has also disapproved of successive conspiracy charges when the smaller was charged before the larger. *See, e.g.*, *Lopez*, 356 F.3d at 468–69; *cf. Gaskin*, 364 F.3d at 454. And regardless of the charging sequence, an overlap in time raises a concern that one unlawful agreement may wholly encompass the other. On balance, then, this factor weighs in favor of Araujo's motion.

The remaining factors, however, weigh against Araujo's argument. As to the fourth and fifth factors, similarity of operation and overt acts, the Pharmacies Case conspiracy involved non-violent burglaries of commercial establishments, whereas the conspiracy alleged in this case involved violent, armed home invasions; additionally, the Government proffers that each conspiracy used "different channels of distribution" to sell drugs. Gov. Ltr. (June 11, 2018), 17-CR-438, Dkt. 255, at 6. Turning to the sixth factor, geographic scope, each conspiracy was centered around New York City, but that area is too large to meaningfully indicate a common agreement. *See United States v. Papa*, 533 F.2d 815, 821 (2d Cir. 1976) ("New York City is large enough to harbor two simultaneous narcotics conspiracies . . . ."). The seventh factor, common objectives, also does not help Araujo; as the Court has discussed, nothing in the record of Santana's trial or Araujo's guilty plea allocution suggests that the distribution of heroin, cocaine, or marijuana was an objective of the Pharmacies Case conspiracy. Finally, the eighth factor does

11

not support Araujo's argument, as there is no evidence of interdependence between the two conspiracies. It appears that each conspiracy could succeed or fail on its own because each involved different means, objectives, and, in large part, personnel. *See Gunn*, 366 F. App'x at 218 (citing *Estrada*, 320 F.3d at 184) (an overlap in participants was insufficient to show interdependence between two conspiracies).

In sum, nearly all of the *Korfant* factors weigh against Araujo's double jeopardy challenge, confirming the Court's conclusion that the two charged conspiracies are different in fact.

### C. Araujo May Reraise His Double Jeopardy Challenge After Trial

The Court is mindful that this opinion depends in large part on the Government's proffers about the evidence that will be adduced at Araujo's trial. On the record presently available, the Court finds that the Government has shown by a preponderance of the evidence that the two conspiracies involve distinct agreements and, thus, that they are not the same in fact. If Araujo is convicted at trial, and if the evidence at trial materially varies from the Government's proffers, Araujo may reraise his double jeopardy motion. *See, e.g.*, *Gunn*, 366 F. App'x at 218 n.2.

In particular, the Court notes that, under Second Circuit law, two drug conspiracy charges may be the same in fact if the evidence shows that both conspiracies are part of "one overall business among all the key figures" involved. *Estrada*, 320 F.3d at 181 (quoting *United States v. Abbamonte*, 759 F.2d 1065, 1070 (2d Cir. 1985)). On the present record, that does not appear to be the case, given the wide divergence in membership between the two conspiracies, the stark differences in means of operation, the Government's proffer that the two conspiracies involved different channels of distribution, and the absence of any evidence in the Pharmacies Case record about the distribution of heroin, cocaine, or marijuana. If convicted in this case, however, Araujo will be free to attempt to convince the Court otherwise.

## CONCLUSION

For all the foregoing reasons, Araujo's motion to dismiss Count Three on double jeopardy grounds (Dkt. 265) is DENIED.

**SO ORDERED.**

**Dated: July 2, 2018**
      **New York, NY**

                                            **VALERIE CAPRONI**
                                            **United States District Judge**