**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 26, 2020

**BY ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Edwin Araujo*, 17 Cr. 438 (VEC)

Dear Judge Caproni:

      The Government submits this letter in opposition to defendant Edwin Araujo's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c). (Dkt. 562 ("Mot.")). As set forth below, the Court does not have jurisdiction to consider Araujo's motion in light of his pending appeal, but even on the merits, Araujo's motion should be denied because (1) he has not shown that extraordinary and compelling reasons require his release, (2) the factors in 18 U.S.C. § 3553(a) do not support his release, and (3) the defendant remains a danger to the community.

**I.     Background**

     **A.  The Offense Conduct**

      The Hot Boys were an enterprise of professional thieves, who worked together to rob drug dealers and other criminals such as the operators of gambling businesses, and to burglarize legitimate establishments such as restaurants, pharmacies, and stores. (See Presentence Investigation Report ("PSR"), at ¶¶ 27-29). The group developed considerable skill in these crimes. For example, for the robbery of drug dealers, the group used not only firearms, but also sophisticated tools such as hydraulic pumps in order to silently enter their victims' locked homes. Once inside, Hot Boys members used surprise and violence to assault, bind, and terrorize the victims and their families in order find and steal the cash proceeds and wholesale drug supplies they sought. During one such robbery, the Hot Boys shot and killed Kelly Diaz, a marijuana dealer whose home they had targeted, in front of his wife. (See PSR ¶ 27).

      The Hot Boys also committed crimes in addition to robbery and burglary. They transported the drugs and other property they stole across state lines, and sold most of the drugs they stole on a wholesale basis. (See PSR ¶ 29). They maintained various locations for the retail sale of marijuana, which they obtained both through robberies and by reinvesting the cash proceeds of their other crimes. (See PSR ¶ 30). Hot Boys members also carried guns and sought to intimidate witnesses in order to protect the group. (See PSR ¶¶ 31-32).

Edwin Araujo was a longtime associate of the Hot Boys who led countless burglaries, and also participated significantly in the Hot Boys' violent robberies of drug dealers. From 2005 to 2007, Araujo organized numerous commercial burglaries. (PSR ¶ 88). He was first imprisoned, however, when he and other members of the crew attempted the armed robbery of a truck that they believed to hold large quantities of cocaine, which was in fact a DEA sting. Araujo initially escaped capture by speeding away, driving on sidewalks and through lights, thereby endangering many innocent people. (PSR ¶¶ 88, 128). Araujo was sentenced to four years in prison for this crime, and also resolved his liability for at least one commercial burglary at the same time. (¶¶ 128-29). In addition, Araujo "owned" a marijuana selling operation that sold significant quantities of the drug, which Araujo obtained both by purchase and by robbery. (PSR ¶ 91).

When Araujo emerged from prison in January 2011—and while still on parole—he organized the pharmacy burglary ring at issue in *United States v. Araujo et al.*, 13 Cr. 811 (ALC) (the "Pharmacy Burglaries Case"). (PSR ¶¶ 130). Araujo also integrated his crew more closely with members of the original Hot Boys, such as David Santiago and Alvarado Dominguez, who were primarily active in armed home invasion robberies. (PSR ¶ 89). Araujo's plea agreement in this case holds him accountable for participating in one specific such crime: He and others attempted to burst into a family apartment to rob drugs and drug proceeds at gunpoint, but were foiled when the apartment's occupants were alerted and succeeded in holding the door until the robbers fled. (PSR ¶ 90).

### B. Relevant Procedural History

On September 6, 2018, Araujo pleaded guilty to one count of conspiracy to commit racketeering, in violation of 18 U.S.C. § 1962(d). At the time, Araujo was serving an 84-month sentence imposed in the Pharmacy Burglaries Case.

This Court sentenced Araujo on May 2, 2019. Prior to the sentencing, the Court confirmed that Araujo withdrew his request for a *Fatico* hearing and would not dispute that the defendant had continued to run a significant narcotics smuggling operation while imprisoned, generating at least $25,000 in profit that was seized from the defendant's commissary account. The Court imposed a sentence of 125 months' imprisonment, at the top of the applicable Sentencing Guidelines range, to run consecutive to Araujo's sentence in the Pharmacy Burglaries Case. (Dkt. 533 ("Sentencing Tr."), at 37). In addressing the defendant, the Court emphasized the concern that "you are a menace to society precisely because you believe that rules don't apply to you," and that "given your history of recidivism and given your behavior in jail at a time when, if there was ever a time you would be behaving yourself, you should be, you didn't, and that tells me you have no respect for the Court, you have no respect for the law, and you really don't have any respect for yourself. So, I am extremely concerned that you are going to recidivate when you get out of jail." (*Id.* at 35). In assessing the impact of Araujo's sentence in the Pharmacy Burglaries Case, the Court noted that his projected release date on that sentence was March 31, 2020, and the Court concluded that "[t]here is no way that that is an appropriate release date for you. There is no way that I can assume that a year from now you are no longer going to be a threat to society." (*Id.* at 36). Araujo filed a notice of appeal on May 15, 2019. (Dkt. 532.) His appeal remains pending; Araujo's brief is due to the Second Circuit on August 27, 2020.

On June 9, 2020, Araujo sought compassionate release from this Court, and the Court ordered this response, directing the Government to provide in addition the last year of Araujo's medical records from the Bureau of Prisons ("BOP") and the last two years of his disciplinary and educational records, which the Government has separately provided to the Court as exhibits A, B, and C.[1]  (Dkt. 562, 563).

### C. The Defendant's Incarceration

The defendant is currently in custody at FCI Fort Dix low-security prison. According to the BOP, the defendant's projected release date is December 5, 2028.  Also according to the BOP, no inmates at Fort Dix low security prison have ever tested positive for COVID-19.  (This facility is separate from the Fort Dix minimum security camp, which has had COVID-19 infections.)

## II.   The Court's Jurisdiction

Because Araujo's appeal of the merits of his sentence is pending in the Second Circuit, the Court does not have jurisdiction to grant him the relief he seeks.  A notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982).  That rule applies in criminal cases. *Berman v. United States*, 302 U.S. 211, 214 (1937); *United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir. 1983).  In *United States v. Ransom*, the Court of Appeals held that while the filing of a notice of appeal "does not preclude a district court, after notice of appeal has been filed, from 'correcting clerical errors under Fed. R. Crim. P. 36 or from acting to aid the appeal,'" it does not permit the "substantive modifications of judgments." 866 F.2d 574, 575–76 (2d Cir. 1989) (quoting *Katsougrakis*, 715 F.2d at 776 n.7).  Thus, the Second Circuit held that the district court in that case "lacked authority" to eliminate an unlawful term of supervised release while the defendant's appeal was pending.  *Id.* at 575.[2]

An order granting the defendant's motion to "reduce the term of imprisonment," 18 U.S.C. § 3582(c)(1)(A), would be no less a substantive modification of a judgment than the elimination of a supervised release term.  *See Ransom*, 866 F.2d at 576 ("The fact that the [modification] benefits the appellant is not a reason for deeming the District Court authorized to act after notice of appeal has been filed.").  Therefore, this Court lacks jurisdiction to grant the defendant's motion while his appeal remains pending. *See, e.g.*, *United States v. Cardoza*, 790 F.3d 247, 248 (1st Cir. 2015) ("Because [defendant's] appeal was pending at the time the District Court ruled on his

---

[1] The Government respectfully requests that Exhibit A, containing Araujo's detailed medical records, be filed under seal in light of the extensive nature of the health-related information contained therein.

[2] This rule does not apply to motions for bail pending appeal, which may (and typically must) be made in the district court in the first instance. *See* Fed. R. App. P. 9(b); *United States v. Hochevar*, 214 F.3d 342, 344 (2d Cir. 2000).

motion to modify the sentence under § 3582(c)(2), we hold that the District Court lacked jurisdiction to enter the order reducing the sentence." (quoting *United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015)).

Federal Rule of Criminal Procedure 37, however, provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). The Advisory Committee Notes contemplate that this rule will be used for § 3582(c) motions. *See* Fed. R. Crim. P. 37, Advisory Committee Notes ("In the criminal context, the Committee anticipates that Criminal Rule 37 will be used primarily if not exclusively for . . . motions under 18 U.S.C. § 3582(c)."); *see also* Fed. R. App. P. 12.1, Advisory Committee Notes (same). Courts in this District have recently applied Rule 37 either to deny motions for compassionate release in light of COVID-19 by defendants with pending appeals, or to indicate that the court views the motion as substantial and would consider it further if the Circuit remanded the case. *See United States v. Skelos,* No. 15 Cr. 317 (KMW), 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020) (noting that the "[d]efendant's pending appeal deprives this Court of jurisdiction to grant his motion for compassionate release," but that "[b]ecause the Court would deny Defendant's motion if he had not filed a notice of appeal, in the interests of judicial economy, the Court reaches the merits pursuant to Rule 37, and denies the motion"); *United States v. Martin*, 18 Cr. 834 (PAE) (S.D.N.Y. Apr. 10, 2020) (Dkt. 465 at 2-4) (same); *United States v. Moseley*, No. 16 Cr. 79 (ER), 2020 WL 1911217, at *1 (S.D.N.Y. Apr. 20, 2020) (issuing "indicative ruling" that motion presented a substantial issue).

### III.    Merits of the Defendant's Application

#### A. Applicable Law

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where the court finds, "after considering the factors set forth in section 3553(a) to the extent they are applicable," that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i); or that the defendant is at least 70 years old and has served at least 30 years in prison, among other things. 18 U.S.C. § 3582(c)(1)(A)(ii). In either case, the proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission has promulgated a policy statement and accompanying application notes under U.S.S.G. § 1B1.13 describing the circumstances under which "extraordinary and compelling reasons exist." U.S.S.G. § 1B1.13 Application Note 1. These include an assessment of the defendant's medical condition and his age:

(A) Medical Condition of the Defendant.—

       (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

       (ii) The defendant is—

            (I) suffering from a serious physical or medical condition,

            (II) suffering from a serious functional or cognitive impairment, or

            (III) experiencing deteriorating physical or mental health because of the aging process,

       that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 Application Note 1.[3]

       The defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same).

**B. <u>Discussion</u>**

    **1. The Defendant Has Failed to Show Extraordinary and Compelling Circumstances Entitling Him to Release.**

       Araujo claims that he "suffers from early onset arthritis, high cholesterol, and asthma," (Dkt. 562 at 3), and that he therefore presents extraordinary and compelling circumstances requiring his immediate release from prison. Araujo's medical records, however, indicate that he is not at higher risk of contracting or suffering serious illness from COVID-19. Araujo suffers

---

[3] Section 1B1.13 also contemplates extraordinary and compelling reasons for release, based on the defendant's family circumstances under U.S.S.G. § 1B1.13 Application Note 1(C), or another extraordinary and compelling reason "[a]s determined *by the Director of the Bureau of Prisons*" under U.S.S.G. § 1B1.13 Application Note 1(d) (emphasis added).

from "early osteoarthritis," not rheumatoid arthritis, and has been "educated" about high cholesterol, but Araujo does not cite nor is the Government aware of any evidence that either osteoarthritis or elevated cholesterol poses an added risk of contracting COVID-19. *See generally* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

While certain asthmatics are at higher risk for severe illness from COVID-19, Araujo does not fall into that category, to the extent he has asthma at all. The very first time that Araujo claimed having asthma was during a BOP sick call on June 3, 2020 (Exh. A at 1), the same day that his application for compassionate release was processed by the BOP's mail facility, Dkt. 562 at 14. Notes from that sick call reflect that Araujo "does not have any history of Asthma in his nearly 7 years of his BOP stay so far," and conclude that there was "nothing found" from the general adult medical exam conducted. Similarly, the PSR notes that "Araujo reported no history of serious illnesses or medical conditions," and that he was not "taking any prescription medications," such as using an asthma inhaler. (PSR ¶ 147). While the circumstances of Araujo's newfound claim to have asthma give substantial cause to doubt its credibility entirely, even taken at face vaslue he still does not qualify as having unique exposure to severe COVID-19 illness. The Centers for Disease Control and Prevention ("CDC") have noted that individuals "with chronic lung disease or *moderate to severe* asthma" are at higher risk for severe illness from COVID 19, *see People Who Are at Higher Risk for Severe Illness*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (emphasis added). Moderate and severe asthma is characterized by, in general, frequent occurrence of asthma symptoms requiring treatment either at day or night. *See* https://www.uofmhealth.org/health-library/hw161158 (describing National Asthma Education and Prevention Program classifications of asthma). Nothing indicates that Araujo's claimed symptoms, if they exist at all, rise to that level, and so do not qualify as an "extraordinary and compelling" reason for his release. *Cf. United States v. Mascuzzio*, No. 16 Cr. 576 (JFK), 2020 WL 3050549, at *3 (S.D.N.Y. June 8, 2020) (concluding that defendant's "age and his asthma are not severe enough to warrant compassionate release" for 40-year old defendant who "has not had to use [an Albuterol inhaler to treat his asthma] in several months").

The vast majority of Araujo's application is dedicated to a discussion of the conditions in BOP facilities that he asserts increase risk of exposure to COVID-19. BOP has made and continues to make significant efforts to respond to the threat posed by COVID-19. Since at least October 2012, the BOP has had a Pandemic Influenza Plan in place. *See* BOP Health Management Resources, https://www.bop.gov/resources/health_care_mngmt.jsp. In January 2020, the BOP began to plan specifically for COVID-19 to ensure the health and safety of inmates and BOP personnel. *See* BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp. As part of its Phase One response, the BOP began to study "where the infection was occurring and best practices to mitigate transmission." *Id*. In addition, the BOP stood up "an agency task force" to study and coordinate its response, including using "subject-matter experts both internal and external to the agency including guidance and directives from the [World Health Organization (WHO)], the [Centers for Disease Control and Prevention (CDC)], the Office of Personnel Management (OPM), the Department of Justice (DOJ) and the Office of the Vice President. BOP's planning is structured using the Incident Command System (ICS) framework." *Id.* BOP has continued to update its procedures regularly in response to COVID-19, and is now in

Phase Seven of the BOP COVID-19 Action Plan.  *See* https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp

As other courts have recognized, notwithstanding "the risks that COVID-19 poses in the federal prison system, . . . the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Morrison*, 16 Cr. 551 (KPF), 2020 WL 2555332, at *3 (S.D.N.Y. May 20, 2020) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  In particular, the FCI Fort Dix low-security prison where Araujo has housed has had no inmates test positive for COVID-19.  Accordingly, while the prison environment creates challenges for preventing the spread of COVID-19, BOP has responded effectively to those challenges, and Araujo is at no "extraordinary and compelling" risk simply by virtue of being incarcerated.

### 2. The § 3553(a) Factors Do Not Support Araujo's Release

Even if Araujo did face heightened risk from COVID-19 (which he does not), it would still be inappropriate to release Araujo under 18 U.S.C. § 3553(a).  A defendant who has shown "extraordinary and compelling reasons," must also demonstrate that the § 3553(a) factors favor his release.  *See* 18 U.S.C. § 3582; U.S.S.G. § 1B1.13; *e.g.*, *United States v. Daugerdas*, --- F. Supp. 3d ---, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (finding defendant's advanced age and health conditions demonstrated extraordinary and compelling reasons for compassionate release in light of COVID-19, but denying release as inconsistent with § 3553(a)).

As this Court found, Araujo's crimes were not only serious in and of themselves, they also reflected a dangerous disregard for the law and a pattern of recidivism that necessitated a substantial term of imprisonment.  In assessing the defendant's history of criminal conduct, the Court concluded that "we are looking at someone who has a very high risk of recidivism," who had "demonstrated absolutely no remorse and no indication that [he is] anything other than someone who is going to return to crime at every opportunity." (Sentencing Tr. at 31).  The Court specifically determined that Araujo's projected release date on his sentence in the Pharmacy Burglaries Case, of March 31, 2020, was not an "appropriate release date for" the defendant.  But Araujo asks to be released only three months later than that, having served only that period of time on the consecutive sentence imposed by the Court in this case.  The Court determined that a consecutive sentence of 125 months' imprisonment was necessary under § 3553(a).  To release Araujo now would be an extraordinary windfall that would not reflect "the nature and circumstances of the offense."  § 3553(a)(1).  Nor would such an early release "promote respect for the law" or "afford adequate deterrence to criminal conduct," § 3553(a)(2), for all the reasons noted by the Court at Araujo's original sentencing.  And reducing Araujo's sentence so dramatically would also create "unwarranted sentencing disparities," § 3553(a)(6). This Court carefully calibrated sentences in this case to reflect relative culpability, and noted in assessing the aggregate terms served by the Hot Boys that Araujo was "at the lower end of the aggregate sentences in this particular enterprise." (Sentencing Tr. at 33).  Converting Araujo's 125-month consecutive sentence into one of only three additional months would mean that he received dramatically less punishment than markedly less culpable defendants, such as Esfrain

Silva and Guillermo Araujo. *See Daugerdas*, 2020 WL 2097653, at *3 (denying compassionate release that would allow defendant to serve markedly less time than less culpable co-defendant).

### 3. **Araujo Still Poses a Danger to the Community**.

To obtain compassionate release, Araujo must also show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). *See United States v. Boyd*, 13 Cr. 890 (LAP) (S.D.N.Y. May 26, 2020) (Doc. No. 93 at 5) (holding that, even if there are extraordinary and compelling reasons for a sentence reduction, "the Defendant must still demonstrate that he 'is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]' U.S.S.G § 1.13(2)"); *United States v. Butler*, 18 Cr. 834 (PAE) (S.D.N.Y. Apr. 7, 2020) (Doc. No. 461 at 4) (acknowledging defendant's COVID-19 risk factors but stating "[t]he Court cannot find, however, that Butler 'is not a danger to the safety of any other person or to the community.' U.S.S.G. § 1B1.13(2).").

Much of the analysis here overlaps with the § 3553(a) factors. The Court specifically noted at sentencing that it would be impossible to "assume that a year from now [*i.e.*, the present] you are no longer going to be a threat to society," and indicated a need for Araujo "to realize that there is more to life than being a thug in jail." (Sentencing Tr. at 36). Araujo's disciplinary records confirm that the Court was correct to doubt that Araujo would cease to be a "menace to society." (*Id.* at 35)  While the Government has not been able to obtain detailed information about the nature of Araujo's subsequent infractions, on July 30, 2019 (less than three months after the Court's stern admonitions to Araujo at his sentencing), Araujo was found guilty by BOP of again possessing drugs or alcohol while in jail, resulting in the loss of good-time credit and other privileges; and on August 10, 2019, Araujo refused to be assigned a bunkmate, resulting in the loss of commissary privileges. In short, Araujo's disrespect for the law is as acute now as it was at the time of his sentencing, and he remains the same danger to the community that he was at the time of the imposition of his original sentence. Accordingly, his motion should be denied.

## IV. Conclusion

For the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By: /s/ _____
David W. Denton, Jr.
Assistant United States Attorney
(212) 637-2744

cc: Edwin Araujo (via U.S. Mail)